# FRANCISCO MARQUEZ CUELLO

*v.*

# BERNARDO AGUILO FUSTER,

and

# BERNARDO AGUILO FUSTER

*v.*

# FRANCISCO MARQUEZ CUELLO.

San Juan, Equity, No. 404.

A mortgagee mistook his remedy and foreclosed on the property described in his mortgage, bought it in at the sale, and went into possession of it, and so remained for several years while the cause was appealed. The supreme court reversed and remanded the case, with instructions that the lower court dismiss it. The mortgagee, while still remaining in possession of the property, then proceeded and foreclosed his mortgage in a proper manner. The mortgagor filed a cross bill and set up the receipt by the mortgagee of the rents and profits of the property in the meantime, as a proper item to reduce the debt. Held: That this could be done and was a proper matter upon which to grant affirmative relief, and the main debt was reduced as per findings of the court in accordance therewith. See the case for the facts and the manner in which this result was accomplished.

**Opinion** filed August 14, 1909.

*Messrs. Mott* and *Ewing,* attorneys for complainant in the original action and respondent in the cross complaint.

V. Porto Rico—4.

Cuello v. Fuster.

*Messrs. Sweet, Rossy, & Campillo,* attorneys for respondent in the original action and cross complainant.

RODEY, Judge, delivered the following opinion:

This is the third time we have given attention to the controversy between these parties. See our opinions in Fuster v. Cuello, 2 Porto Rico Fed. Rep. 183, and 3 Porto Rico Fed. Rep. 193. The facts as to the contentions between them are pretty well set out in said two former opinions, and several questions of law are settled regarding the right or lack of right to recover damages as the same were proper or too remote. It is, however, necessary to here restate some of the facts in order that the same may be properly understood. We therefore quote from the first opinion as follows: In 1899 the plaintiff owned a tract of land at Lares, Porto Rico, consisting of 49 acres, and mortgaged it to the defendant. The payments on the mortgage became due from time to time, over several years thereafter. After one of the instalments became due and was not paid, the defendant brought an action to foreclose his mortgage, and, in addition to seizing or attaching the property mentioned in his mortgage, also attached or seized other property which was mortgaged to other people. Considerable litigation ensued. He finally succeeded, but the plaintiff appealed from the decision to the supreme court of the island. The defendant, however, gave a forthcoming bond, under procedure that gave him that right, and went on and sold the mortgaged property, and bought it himself. The supreme court of the island reversed the case, holding that the defendant had mistaken his remedy, and had attempted to proceed under a local law for the

foreclosure of mortgages, that had been repealed, and the result was that all the proceedings he had taken were held for naught. He thus found himself in possession of, and vested on the record with, this plaintiff's property, and collecting the income from it, without proper legal right, and he so still remains. It was, of course, then obligatory upon him to begin all over again in the local court; or, as this court had jurisdiction on other grounds, he could dismiss his suit there (and it probably would have been dismissed for him anyway, under the mandate of the supreme court) and bring a new suit, either in that court or this, to foreclose the mortgage regularly. He chose the latter mode. The suit is now here as No. 404 on the equity docket."

The present issue is in the suit No. 404, referred to in the closing paragraph of the foregoing quotation, and on a cross bill filed thereto by the respondent, Fuster, wherein the latter claims damages in about the sum of $10,000 for the alleged wrongful acts of Cuello in and about his illegal efforts to foreclose the mortgage which the cross complainant owed him, and his retention of the property he took possession of up to the present time, and his appropriation of the crops and receipt of the profits thereof, etc.,—all as mentioned in said two above-cited opinions, and as set forth in the cross bill.

A full trial of the issues was had before the court alone, without the intervention of an examiner or master, beginning the 28th day of June last. More than a hundred pages of evidence were taken on the issues, all of which has since been transcribed by the stenographer, and is now before us. We have reread the same, together with the elaborate briefs and arguments of the respective counsel, and have also examined the many exhibits introduced during the trial.

Cuello v. Fuster.

A further statement of facts appears to be necessary. The mortgage was made March 7, 1899, from the cross complainant to the complainant, covering a tract of 49 cuerdas of land situated in the barrio of Bartola, municipal district of Lares, on this island, to secure unto complainant the payment of 5,960 pesos of provincial currency without interest,—4,000 pesos of it to be paid in instalments of 1,000 pesos each on the 15th of January of each of the years 1900–1–2–3, following, and the balance of 1,960 pesos to be paid a year later still, on January 15, 1904.

The evidence showed that there was a payment of $250 made on January 15, 1903. It further showed that since February, 1905, the complainant has remained in possession of the 49-cuerda tract of land covered by the mortgage, and has taken all the coffee therefrom, and appropriated the same to his own use, and generally used the farm as if it was his own. He neither tendered it back to the cross complainant, nor did the cross complainant make any demand for it. They seemed to think that the pendency of the suits between the parties required everything to remain *in statu quo*. The cross complainant contends that he had 40 cuerdas of this land planted in coffee, and that it would produce 4 quintals per cuerda, and that when he was ousted of possession, in February, 1905, he had about half the crop gathered. He further contends that there is a dwelling house adjoining the tract mentioned in the mortgage, which the complainant has used all this time for his mayordomo to live in. The complainant contends that this house was intended to be and was included in the mortgage. The evidence showed that it was bought by a different deed, but was owned by the cross complainant at the time he made the mortgage.

There is a lot of as flatly conflicting evidence in the cause as it is possible to find in a case of this character. On the one hand, complainant contends that there were but 30 cuerdas of land in coffee, and that it would produce but $2\frac{1}{2}$ quintals per cuerda, and would sell on an average for $10 or $10.50 per quintal, but that it cost almost as much to raise it and gather it as it sold for, and that he made little or nothing out of his possession of the plantation for the last four years while he has had it.

On the other hand, the cross complainant presented a lot of evidence to show that there were 40 cuerdas of the land in coffee, and that it was in splendid condition, and would easily produce 4 quintals per cuerda, which would sell as high as $12 or more per quintal. The cross complainant also claims damages for the use of the surplus of the land for pasturage and for fruit-raising purposes, and damages for rent of the dwelling house, which he claims is not included in the mortgage, and for waste, and permitting the plantation to run down generally. Counsel **for** the respective parties have presented elaborate written arguments and a most complicated set of tentative calculations under the view their respective clients take of the case, but these calculations have been of little aid to us, as we cannot take the views of the rights **of** the parties set out in the same.

After a most thorough and careful examination of the evidence, facts, and circumstances in the record, we make the findings of fact and law, which will be set out below.

It is manifest that the parties for the last three or four years have been engaged in a most bitter political and social fight in the vicinity where they live, and that there is an inten-

sity of feeling existing between them and their witnesses and neighbors that is hard to be comprehended by people who have not lived in Porto Rico for any length of time. One guiding fact has impressed us through all the controversy, and that is that the cross complainant could have avoided every bit of this trouble by paying his debt when it was due, and therefore he is the most to blame. But notwithstanding this, the complainant had no right to keep possession of this property for the length of time he did and to act in the way he did. After mature reflection, we have concluded that the honors are about even between them as to the injuries they have inflicted upon each other, and therefore we find that the complainant is not entitled to, and will not be allowed, the $1,500 that was fixed in the instrument for counsel's fees and costs and expenses, the same under the circumstances here being unreasonable and inequitable, and the payment of $250 being, under the circumstances, sufficient in that regard. On the other hand, we find that the house referred to by cross complainant is and was included in the mortgage, and that cross complainant is entitled to no consideration regarding the same as being outside of the mortgage. We further find that the alleged damage for use of the surplus land in the property mortgaged, for planting bananas and small fruits and for pasture, is also a negligible quantity, and, if it was worth anything, it is offset by the loss of the costs, expenses, and counsel fees item to the complainant.

Therefore, we find, as matter of fact, that the mortgage debt, in and of itself, calculated according to its terms, amounts, on August 15, 1909, when reduced to gold, to the sum of $4,885.21, to which should be added the taxes of $56.94 paid by complainant, making in all $4,942.15, which is the amount of the debt the cross complainant owes him.

Cuello v. Fuster.

On the other hand, after considering and balancing the very conflicting evidence, we find that there were 35 cuerdas of the land mentioned in the mortgage planted to coffee, and that the complainant gathered therefrom 3 quintals of coffee per cuerda, or 105 quintals per annum, for four full seasons, and should also account for 35 quintals of coffee which he found on the place when he took possession of it, in February, 1905. In other words, that he should in all account for 455 quintals of coffee. We further find that he sold this coffee for, and it was worth on the average, $11 per quintal, and that he realized therefrom the sum of $5,005, and that a reasonable profit thereon is one half of said sum, which is $2,502.50. Therefore, we find that he owes the cross complainant as damages for the wrongful detention of the plantation in question, and its use, occupation, and the taking of its crops and produce, this sum, which should be deducted from the mortgage debt aforesaid, and which will leave a balance of $2,439.65 due on the mortgage debt.

We regard this decision as just, right, and proper between the parties. They both have exaggerated ideas of their rights, particularly the cross complainant. He was not damaged in the sum of $10,000, or any other sum other than as we have herein found. If he had paid his debt when it was due, the complainant would never have taken his property, and we think we have given him every dollar, in our decision as aforesaid, which he himself could have made off of the place had it remained in his possession. Moreover, he has had more than four years of a stay on a debt that he was not in a position to pay. There are a good many other small points between the parties, all of which we think are balanced as above set out.

A proper decree will therefore be prepared and entered, fore-

closing the mortgage as may be proper and legal, and providing for a sale of the property to satisfy the amount due as aforesaid, with costs, unless the same is paid within fifteen days after the entry of the decree. Under all the circumstances of the case, we have concluded that the costs must be paid share and share alike by the parties, to include a fee for the stenographer's transcript of $62.20. Any correction of the entries in the registry of property made necessary by the illegal attempt to foreclose the mortgage on the part of complainant must be paid by him.